IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

RAMONA HILLMAN,

    Plaintiff,

v.                                         No. 05-2052

SHELBY COUNTY GOVERNMENT,

    Defendant.

_____

ORDER DISMISSING CASE
_____

    This action was brought by the Plaintiff, Ramona Hillman, against her former employer, Shelby County Government ("Shelby County"), alleging retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and discrimination on the basis of sex in violation of the Tennessee Human Rights Act ("THRA"), Tennessee Code Annotated § 4-21-101, et seq.  During the pretrial conference held in September, the Court noted that, although the Defendant had raised the issue of failure to exhaust administrative remedies in its answer, it had never moved for dismissal on that ground.  The September 17, 2007 trial setting was removed from the calendar and counsel were instructed to submit briefs on the exhaustion issue.  Upon review of the parties' subsequent filings, the Court observed that, instead of briefing exhaustion of administrative remedies, counsel for the Defendant had set forth a new ground for dismissal--federal issue preclusion.  Thereupon, the Court instructed the Plaintiff to brief the issue of issue preclusion and the Defendant the issue of exhaustion.  The briefs filed by counsel are now before the Court for disposition.

    The Court will first address the question of exhaustion.  The Plaintiff was terminated on June

11, 2004 from her position as a corrections officer at the Shelby County Division of Corrections (the "SCDC") following an investigation into acts of misconduct. She was given a due process hearing on June 8, 2004, after which the hearing officer recommended termination. The discharge was upheld in a third step hearing, after which Hillman filed a notice of appeal to the Civil Service Merit Board (the "CSMB") pursuant to the Tennessee Uniform Administrative Procedures Act and Shelby County policy, as well as a memorandum of understanding between Shelby County and the American Federation of State, County and Municipal Employees (AFSCME) Union. A hearing was conducted on August 26, 2004 and the termination was again upheld.

In support of its contention that the Plaintiff failed to exhaust her administrative remedies, the Defendant argues that a Shelby County employee may challenge a termination in one of three ways: (1) filing a direct appeal to the CSMB, (2) filing a grievance under the union-negotiated grievance guidelines and engage in binding arbitration, or (3) filing a charge with the Equal Employment Opportunity Commission (the "EEOC") and thereafter seeking relief in federal court under Title VII and the THRA. Shelby County insists that an employee's election of any one of these avenues of relief precludes election of another, citing Redmon v. Mineta, 2007 WL 1837134 (6th Cir. June 25, 2007).

A review of the case cited reveals, however, that it has no application here. Redmon was a federal employee of the Federal Aviation Administration (the "FAA"). Redmon, 2007 WL 1837134 at *1. She was suspended for misconduct and chose to seek relief through the employee grievance procedure negotiated pursuant to a collective bargaining agreement between the FAA and the National Air Traffic Controllers Association. Id. at *1-2. When the union denied her demand to pursue the matter to arbitration, Redmon filed an internal EEO charge with the FAA. Id. at *2. Her

EEO complaint was denied on the grounds that Redmon had elected to pursue the union negotiated grievance process rather than the EEO process and thus was foreclosed from the EEO process pursuant to 29 C.F.R. § 1614.107(a)(4). Id. The regulation, and the Sixth Circuit's analysis, applies only to federal sector employees, however.[1] Shelby County has referred the Court to no case applying Redmon or § 1614.107(a)(4) to a non-federal employee such as Hillman.

"In Title VII, Congress set up an elaborate administrative procedure, implemented through the EEOC, that is designed to assist in the investigation of claims of . . . discrimination in the workplace and to work towards the resolution of these claims through conciliation rather than litigation." Patterson v. McLean Credit Union, 491 U.S. 164, 180-81, 109 S. Ct. 2363, 2374-75, 105 L. Ed. 2d 132 (1989), Granderson v. Univ. of Mich., 211 F.App'x 398, 400 (6th Cir. 2006); Duncan v. Delta Consol. Indus., Inc., 371 F.3d 1020, 1024 (8th Cir. 2004), reh'g & reh'g en banc denied (Aug. 5, 2004). An individual "seeking to bring a discrimination claim under Title VII in federal court must first exhaust [her] administrative remedies." Randolph v. Ohio Dep't of Youth Servs., 453 F.3d 724, 731 (6th Cir. 2006), reh'g & reh'g en banc denied (Nov. 13, 2006). Title VII requires

---

[1]Other cases cited by the Defendant fare no better. Gardner v. Nicholson, 181 F.App'x 961 (11th Cir.), cert. denied ___ U.S. ___, 127 S. Ct. 510, 166 L. Ed. 2d 381 (2006), cited for the proposition that an employee's election of one of the three options precludes election of the others, fails to support the proposition and, like Redmon, involves a federal employee. Miller v. County of Santa Cruz, 796 F.Supp. 1316 (N.D. Cal. 1992), aff'd 39 F.3d 1030 (9th Cir. 1994), cert. denied, 515 U.S. 1160, 115 S. Ct. 2613, 132 L. Ed. 2d 856 (1995) is cited for California's "primary rights theory," which has apparently not been espoused by Tennessee or the Sixth Circuit. Reed v. Livingston Auto Center, 146 F.App'x 93 (9th Cir. 2005) has no application here as it is not a Title VII case. Shelby County also points to Hayner v. City of Washington Courthouse, No. 2:06-CV-705, 2007 WL 38136 (S.D. Ohio Jan. 4, 2007), stating that the court therein held that a party's failure to appeal the decision of an administrative body provides a court with a basis for divesting itself of subject matter jurisdiction on exhaustion grounds. However, the statement referred to by the Defendant was not in fact the holding of the case but, rather, mere dicta. Indeed, the court declined to analyze the failure to exhaust argument for reasons not relevant to the case at bar. Hayner, 2007 WL 38136, at *3-4.

that "[a] charge . . . be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . ." 42 U.S.C. § 2000e-5(e)(1).  A civil action must be filed within ninety days of the plaintiff's receipt of notice of dismissal and right to sue from the EEOC.  42 U.S.C. § 2000e-5(f)(1).  "It is well-established that a party's exhaustion of administrative processes for filing a claim of discrimination is a condition precedent to filing suit in the district court . . ." Mitchell v. Chapman, 343 F.3d 811, 819-20 (6th Cir. 2003), cert. denied, 542 U.S. 937, 124 S. Ct. 2908, 159 L. Ed. 2d 813 (2004).  "Federal courts do not have subject matter jurisdiction of Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge."  Jones v. Sumser Retirement Village, 209 F.3d 851, 853 (6th Cir. 2000), reh'g & suggestion for reh'g en banc denied (Jun. 1, 2000) (citation omitted).

      There is no dispute that Hillman filed a timely EEOC charge and that the EEOC issued a notice of right to sue.  As the Court is unconvinced based on a review of the statute and caselaw that a Title VII plaintiff must exhaust her administrative remedies by any method other than through the EEOC process, and Shelby County has cited to none, dismissal for failure to exhaust administrative remedies as to the federal claim is not warranted.

      Nor is the Plaintiff prohibited from moving forward with allegations pursuant to the THRA.  In Moore v. Nashville Electric Power Board, 72 S.W.3d 643 (Tenn. Ct. App. 2001), app. denied (Feb. 11, 2002), the Tennessee Court of Appeals specifically held that "a civil service employee may bring an action under the THRA without first exhausting his remedies under civil service rules" and that "there is no requirement that, once an employee has chosen to institute administrative proceedings under the civil service rules, he must see those proceedings through to their conclusion before bringing an action under the THRA."  Moore, 72 S.W.3d at 651.  In doing so, the court

4

recognized that

> [t]he [THRA] was enacted to safeguard all individuals within the state from discrimination because of race, creed, color, religion, sex, age or national origin in connection with employment. The Act applies to all Tennessee employers, including . . . state and local government employers. The THRA forces individuals filing under the Act to pursue either an administrative path and, if they wish, seek judicial review of the administrative decision, or file a direct action . . .

Id. at 648-49 (internal citations and quotation marks omitted).  "The administrative path under the THRA involves review of discrimination claims by the Tennessee Human Rights Commission . . .[,]" not the civil service rules.  Id. at 649.  The appellate court stated that "[w]hile [employees] [are] clearly entitled to pursue remedies under the civil service rules, the THRA provides them with another, independent right of redress for any perceived wrongs committed by [their employer]."  Id.  Although the Defendant submits that, unlike Hillman, Moore did not raise any activity prohibited by the THRA in his civil service hearing, the Court does not find that fact to have been relevant to the court of appeals' decision.

The Court now turns to the issue of collateral estoppel.  Collateral estoppel, or issue preclusion, "refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided."  Rawe v. Liberty Mut. Fire Ins. Co., 462 F.3d 521, 528 n.5 (6th Cir. 2006).  "[C]ollateral estoppel relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication."  Allen v. McCurry, 449 U.S. 90, 94, 101 S. Ct. 411, 415, 66 L. Ed. 2d 308 (1980) (citation omitted).  "[W]hen a state agency acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts."  Univ. of Tenn. v. Elliott, 478 U.S. 788, 799, 106 S. Ct. 3220, 3226, 92 L. Ed. 2d 635 (1986) (internal

citation and quotation marks omitted); see also Morris v. Esmark Apparel, Inc., 832 S.W.2d 563, 565-66 (Tenn. Ct. App. 1991), app. denied (Apr. 27, 1992) (adopting in Tennessee the preclusive effect of quasi-judicial decisions of administrative agencies).  "Federal law requires [courts] to consult relevant state law to determine the potential preclusive effect of a prior state court judgment." Perez v. Aetna Life Ins. Co., 150 F.3d 550, 555 n.5 (6th Cir. 1998).  Thus, this Court must look to the law of issue preclusion in Tennessee.  In Nelson v. Jefferson County, Kentucky, 863 F.2d 18 (6th Cir. 1988), cert. denied, 493 U.S. 820, 110 S. Ct. 76, 107 L. Ed. 2d 42 (1989), the Sixth Circuit recognized that, "when a state agency is acting in a judicial capacity, even unreviewed state administrative determinations may preclude a trial on the same issues in federal court if the determination would be entitled to preclusive effect in the appropriate state court.  Thus, [there] is a three-step process:  first, was the agency acting in a judicial capacity; second, would the decision have preclusive effect under [state] law; and third, does the federal action seek to litigate issues already determined by the state agency." Nelson, 863 F.2d at 19 (citing Elliott).

The parties agree that the first step in the process has been met.  The Court must next determine whether the decision of the CSMB would have a preclusive effect on the Plaintiff's discrimination claim under Tennessee law.  In Tennessee, "once an issue has been determined by a court of competent jurisdiction, the doctrine of collateral estoppel renders that determination conclusive on the parties and their privies in subsequent litigation, even when the claims or causes of action are different." Warner v. McMinn County, Tenn., No. 1:04-CV-399, 2007 WL 3020510, at *13 (E.D. Tenn. Oct. 11, 2007).  The party seeking to invoke the doctrine bears the burden of proof. Id.  To satisfy its burden then, Shelby County must demonstrate that:  "(1) the issue to be precluded is identical to the issue decided in the earlier [proceeding]; (2) the issue to be precluded

was actually litigated and decided on its merits in the earlier [proceeding]; (3) the judgment in the earlier [proceeding] has become final; (4) the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier [proceeding]; and (5) the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier [proceeding] to litigate the issue to be precluded." See id. at *14.

      The Plaintiff concedes the third and fourth elements, but argues that the Defendant cannot bear its burden as to those remaining. Specifically, Hillman submits that the issues raised in this action are not identical to those before the CSMB and were not actually litigated and decided on the merits therein. It is her position that the CSMB did not address whether she was treated differently on the basis of her sex than male employees and whether her termination was in retaliation for earlier protected activity. In response, the Defendant refers the Court to pages 96 and 97 of the administrative hearing transcript, in which Hillman's representative seeks admission of a document, arguing that "I think it's emphatically germane to this case because of the level of discipline imposed on Ms. Hillman and then based on the level of discipline imposed on other people committing the same act versus then when Ms. Hillman was terminated other people were disciplined based on the same accusations . . ." CSMB member Jerry Cobb responded, "We'll let it in and weigh the value of it."

      The charges before the CSMB included intentional failure to carry out instructions and willful disregard of lawful orders in violation of Shelby County's Administrative Policy Standards of Conduct, Employee General Post Orders and Employee Handbook, as well as the Memorandum of Understanding between Shelby County Government and AFSCME Local 1733. According to the factfinding, on February 4, 2004, a criminal warrant was issued for Hillman's arrest by the

municipal court in Southaven, Mississippi for two counts of assault, physical fear arising from an on-going dispute with the wife of her boyfriend, Shirley Abram. She was taken into custody and booked on the charges on February 9, 2004. The following day, the Plaintiff was issued an Employee Investigation Form advising her that she was under investigation in connection with the criminal charges. In May 2004, she was found guilty as charged, fined and given a suspended sentence. As part of the dispute, Abram made at least one telephone call to Hillman's employer to report threats, a process server effected service on the Plaintiff on workplace premises, and several Shelby County Division of Corrections employees were subpoenaed to appear in court in Mississippi on Hillman's behalf on three to four separate occasions. Moreover, the Plaintiff's employment file was replete with incident reports of past violent and improper acts directed at co-workers and supervisors.

  The Plaintiff was issued a Loudermill packet during a meeting attended by four other officers on May 28, 2004, notifying her of the possibility of major discipline. According to the CSMB hearing testimony of one of the officers present, Hillman became upset, stated "I am going to kill that bitch" referencing Abram, removed her badge and walked out of the room. At the Loudermill hearing conducted on June 8, 2004, the Plaintiff was represented by Officer Jeffrey Woodard and was permitted to present evidence why major disciplinary action should not be imposed. Upon reviewing the relevant documentation, it was recommended that Hillman be terminated.

  A Step 3 grievance was heard at which the committee was advised that there were documents Hillman wanted to present at the Loudermill hearing but was not permitted to do so. The documents were provided to the Step 3 grievance committee. The termination was upheld. In a decision issued October 11, 2004, the CSMB determined that there was substantial evidence of guilt on the part of

the Plaintiff and just cause existed for her termination.

Title VII prohibits employers from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . ." 42 U.S.C. § 2000e-2(a)(1). In order to establish a prima facie case of discrimination where direct evidence is not available, a plaintiff must show, under the well-settled paradigm articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981) that "(1) she is a member of a protected class, (2) she was subjected to an adverse employment action, (3) she was qualified, and (4) she was treated differently than similarly-situated male and/or nonminority employees for the same or similar conduct." McClain v. Nw. Cmty. Corr. Ctr. Judicial Corr. Bd., 440 F.3d 320, 332 (6th Cir. 2006). If the plaintiff "sustains her burden of establishing a prima facie case, the burden then shifts to [the employer] to articulate a legitimate, nondiscriminatory reason for [its actions]. If [the employer] successfully carries its burden, the burden returns to [the plaintiff] to produce evidence from which a jury could find that [the employer's] stated reason is merely pretextual." Id. Pretext may be demonstrated by showing that the articulated reasons "(1) had no basis in fact, (2) did not actually motivate the adverse action taken against her, or (3) were insufficient to motivate the adverse action taken against her." Id. (citation omitted).

> To establish a prima facie case of retaliation, a plaintiff must show: (1) that she engaged in protected activity; (2) that defendant knew of this exercise of her protected rights; (3) that defendant consequently took an employment action adverse to plaintiff; and (4) that there was a causal connection between the protected activity and adverse employment action. If a plaintiff establishes a prima facie case of retaliation, the defendant may rebut the presumption of retaliation by asserting a legitimate non-discriminatory reason for its actions. The plaintiff must then show by a preponderance of the evidence that the employer's proffered reason for the

9

> employment action is pretextual. The plaintiff must produce sufficient evidence from which the jury could reasonably reject the defendant['s] explanation and infer that the defendant[] intentionally discriminated against her. The plaintiff must submit evidence demonstrating that the employer did not honestly believe in the proffered non-discriminatory reason for its adverse employment action.

Balmer v. HCA, Inc., 423 F.3d 606, 613-14 (6th Cir. 2005) (internal citations and quotation marks omitted).

In Bechtold v. City of Rosemount, 104 F.3d 1062 (8th Cir. 1997), the court was faced with a case similar to that at bar, involving the issue of collateral estoppel in connection with a claim of discrimination. Like Tennessee, Minnesota state law required a showing that the issue presented to the court was identical to that in the state proceeding. See Bechtold, 104 F.3d at 1066-67. The court concluded that the state's finding that the plaintiff's employer had "substantial, legitimate reasons" for its actions and that the record revealed no impropriety on the part of the defendant. Id. at 1067. The Eighth Circuit held that the lack of impropriety necessarily constituted a nondiscriminatory decision by the employer as well as a lack of pretext or mixed motive. Id. Accordingly, the issues presented were identical and the issue preclusion test was met. Id.

The Sixth Circuit would appear to agree. In White v. Gilless, No. 94-5191, 1995 WL 39524 (6th Cir. Feb. 1, 1995), the court found that the district court properly gave preclusive effect to the Shelby County Civil Service Merit Board's factual findings with respect to the plaintiff's discrimination and retaliation claims under Title VII. White, 1995 WL 39524, at *1. The CSMB determined that White was guilty of insubordination and refusing to perform her duties and, consequently, that her firing was justified. The court of appeals held the finding satisfied the elements of issue preclusion and was therefore entitled to preclusive effect. Id. at *1-2.

Here, the CSMB found that just cause existed for Hillman's termination based on her actions

involving Abrams and particularly in light of her history of violent behavior and misconduct.[2] The Court concludes, as did the court in Bechtold, that the agency, in finding just cause for the discharge, determined the existence of a legitimate nondiscriminatory reason therefor and a lack of pretext or mixed motive. Further, it is clear that the Plaintiff had a full and fair opportunity to litigate her termination. She was represented at the hearings and was permitted to present evidence and cross-examine witnesses. In addition, it appears that documents Hillman requested be reviewed by the CSMB relevant to discipline of other employees were in fact considered. Thus, it is the decision of this Court that the elements of issue preclusion have been satisfied and that the Plaintiff's discrimination and retaliation claims are barred under the doctrine of issue preclusion. See Bechtold, 104 F.3d at 1068 (where elements of issue preclusion test had been met, claims were properly barred); White, 1995 WL 39524, at *1-2 (rejecting argument on appeal that district court's giving of preclusive effect to findings of the Shelby County CSMB were improper; holding that such findings should be given full res judicata effect with respect to plaintiff's Title VII claims where elements of Tennessee issue preclusion had been satisfied). Based on the foregoing, the Plaintiff's claims of discrimination and retaliation under Title VII and the THRA are hereby DISMISSED.

IT IS SO ORDERED this 31st day of October, 2007.

                              s/ J. DANIEL BREEN
                              UNITED STATES DISTRICT JUDGE

---

[2] Even though the Plaintiff makes much of the fact that the charges brought against her for assault and which formed the basis of her termination were eventually dropped, the testimony at the hearing was that she would not have been reinstated in any case based upon her lengthy and consistent history of violent behavior during her employment with Shelby County.